ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 JAN 19 P 12: 36
CLERK
S.D. OF GA.

MARK STEPHEN THOMPSON,       )
                              )
    Plaintiff,                )
                              )
v.                            )   CV 310-062
                              )
THOMAS GRAMIAK, et al.,       )
                              )
    Defendants.               )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

At the time of the events giving rise to the above-captioned case brought pursuant to 42 U.S.C. § 1983, Plaintiff was an inmate incarcerated at the Montgomery State Prison ("MSP") in Mt. Vernon, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis*. The case is now before the Court on the parties' cross motions for summary judgment. (Doc. nos. 37, 40.) Plaintiff responded to Defendants' motion in his own summary judgment motion and in a reply filed in support of his motion; Defendants responded to Plaintiff's motion in a reply in support of their summary judgment motion. (Doc. nos. 43, 45.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**, that Plaintiff's motion for summary judgment be **DENIED**, that a final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

I.   **FACTS**

Plaintiff began serving his current sentence in 2008, and on January 8, 2009, he transferred to MSP, where he remained incarcerated until his transfer to a different facility on February 25, 2011. (Doc. no. 37, Ex. A (hereinafter "Pl. Dep."), pp. 27, 35; Id., Ex. B (hereinafter "Gramiak Aff."), ¶¶ 7, 20 & Attach. 1 (record of Plaintiff's transfer history).) Defendant Brown was the Warden at MSP from June of 2008 until he retired in June of 2010. (Id., Ex. E (hereinafter "Brown Aff."), ¶ 4.) Defendant Gramiak was a Deputy Warden at MSP until he took over as Warden following Defendant Brown's retirement. (Gramiak Aff. ¶ 4.)

In the claims with which Plaintiff was allowed to proceed in this case, he asserts that Defendants acted in violation of the Eighth Amendment by assigning him to a work detail that exposed him to conditions that were restricted in his medical profile.[1] (See doc. no. 1.) In particular, Plaintiff contends that his assignment to a work detail in the kitchen at MSP amounted to deliberate indifference to his health and safety in light of the fact that his medical profile indicated he should not be exposed to "fumes, extreme heat that may cause breathing problems." (Id. at 5 & Ex. B.; doc. no. 40.)

Plaintiff's respiratory condition has been routinely monitored and treated throughout

---

[1] Plaintiff's attempted official capacity claims for monetary damages, along with former-Defendant Brian Owens, were dismissed when the complaint was screened pursuant to the IFP statute, 28 U.S.C. § 1915A. (See doc. nos. 10, 17.) In addition, Plaintiff's request for a preliminary injunction regarding his work detail assignment was denied as moot because of his transfer to a different facility. (See doc. nos. 25, 31.)

2

his incarceration[2] because he has a history of chronic asthma and because, for roughly 20 years, he smoked a pack of cigarettes per day. (Pl. Dep., pp. 16-17, 31-32; doc. no. 37, Ex. C (hereinafter "Aremu Aff."), ¶¶ 7-8 & Attach. 1 (Plaintiff's prison medical records).) However, at the time he arrived at MSP in January of 2009, he did not have any medical profiles. (Pl. Dep., p. 39; Gramiak Aff. ¶ 8 & Attach. 2 (Initial Classification Committee Form).) Inmates at MSP are assigned to one of three categories of work details: outside, food services, or inmate orderly. (Gramiak Aff. ¶ 6.) Consistent with his lack of medical profiles, upon his arrival at MSP Plaintiff was assigned to an outside detail, which involved tasks such as mowing and picking up trash. (Id. ¶ 8 & Attach. 2 (Classification Committee Memorandum).) On July 27, 2009, Plaintiff complained of shortness of breath while working at his outside detail. (Id. ¶ 9; Pl. Dep., pp. 39-40.) As a result, on July 29, 2009, Plaintiff was given the medical profile at issue in this case, which set forth the following limitation: "No work where there is exposure to fumes, extreme heat that may cause breathing problems."[3] (Pl. Dep., pp. 39-40; Gramiak Aff. ¶ 11 & Attach. 4 (copy of medical profile).)

Following the issuance of his medical profile, Plaintiff's outside work detail was immediately cancelled. (Pl. Dep., p. 44; Gramiak Aff. ¶ 12.) On August 12, 2009, Plaintiff was assigned to a food services detail working in the "tray room," which involves rinsing

---

[2]Plaintiff served three prior sentences prior to his current stint of incarceration; as a result, he has been incarcerated in Georgia prisons on and off since 1996. (See Pl. Dep., pp. 24-25.)

[3]In his affidavit testimony, Bolaji Aremu, a Physician's Assistant at MSP who treated Plaintiff, indicates that this type of medical profile "is commonly assigned to inmates who suffer from asthma." (Aremu Aff. ¶ 11.)

3

dirty dinner trays with hot water, feeding them through a dishwasher, and putting them away when they have dried. (Doc. no. 37, Ex. D (hereinafter "Connor Aff."), ¶ 8.) Pam Connor, the Food Services Manager at MSP, attests that "inmates working in the tray room do not use any chemicals or cleaners. The only cleaners used in the tray room are chloride and a rinse aid that are contained within the dishwashing machine, which does not omit any fumes." (Id. ¶ 9.)

After working in the tray room for three weeks, Plaintiff was transferred to the "pots and pans" detail in the MSP kitchen, which requires inmates to wash pots and pans and put them up to dry. (Id. ¶ 11; Pl. Dep., p. 48.) Ms. Connor attests that the only cleaners used in the pots and pans detail are diluted soap and diluted bleach, the latter of which is used to rinse the pots and pans and to mop the floors. (Connor Aff. ¶ 12.) According to Ms. Connor, "[n]either the diluted bleach nor the diluted soap [used in the food services detail] omits fumes." (Id. ¶ 13.) Plaintiff, however, testified that certain other unspecified "degreasers" were also used, and he avers that the safety warning on the liquid bleach states that a respirator should be used if "misting and vapors occurs." (Pl. Dep., p. 48; doc. no. 40, pp. 2-3.) Plaintiff also complains that he "had no access to any kind of personal protection to the liquid bleach used in [the] MSP kitchen." (Doc. no. 40, p. 3.) Notably, however, Plaintiff does not assert that bleach was used in such as way as to result in misting or vapors in his detail. (See id.) Additionally, Ms. Connor attests that masks and latex gloves are available and are regularly provided as needed to inmates working in the kitchen area, and Plaintiff admits that he never requested these or any other accommodations, aside from requesting that he be taken off the kitchen detail. (Connor Aff. ¶ 15; Pl. Dep., pp. 51-53.)

4

In addition, according to Defendant Gramiak and Ms. Connor, the entire MSP facility, including the kitchen, is air-conditioned. (Gramiak Aff. ¶ 13; Connor Aff. ¶ 10.) Plaintiff, however, disputes this assertion and alleges that "the kitchen had 2 fans in the cooking area, everywhere else was extremely hot, poor ventilation." (Doc. no. 40, p. 3.)

Plaintiff testified in his deposition that he complained that his food services work detail did not comport with his medical profile to prison officials, including Defendant Gramiak, who had authority over detail assignments. (Pl. Dep., pp. 37-38.) Defendants assert – and Plaintiff does not dispute – that the prison officials to whom Plaintiff complained followed the usual protocol in responding to Plaintiff's complaints, which entailed contacting the medical department and verifying that Plaintiff was able to work in his food services detail despite his medical profile and his complaints; following such verification, Defendant Gramiak declined to remove Plaintiff from the food services detail in response to his complaints. (See id.) Plaintiff likewise does not dispute that MSP medical personnel confirmed his ability to work his food services details following his complaints. Indeed, Plaintiff testified in his deposition that he complained about his food services work detail to medical staff several times, in response to which he was told that his conditions and medical profile did not prevent him from being able to work in his assigned detail. (See id. at 34-35, 38, 49-51.)

Plaintiff also states that he raised the issue of his work detail with Defendant Brown on a single occasion. According to Plaintiff, Defendant Brown refused to discuss the matter, a stance he maintained when Plaintiff reminded him that he was the Warden of MSP and that Defendant Gramiak worked under him. (Id. at 66-67.)

5

Plaintiff's prison medical records confirm that Plaintiff was seen in September of 2009 for complaints of shortness of breath, dizziness, and headaches. (Aremu Aff. ¶ 14.) However, the treatment notes specify that there was "no objective finding of chemical inhalants or dizziness." (Id. & Attach. 1, p. 48.) During a subsequent examination in December of 2009, Plaintiff denied experiencing chest pain, shortness of breath, or dizziness. (Id. ¶ 15 & Attach 1, p. 43.) According to Plaintiff, he never had an asthma attack during his incarceration at MSP, and he experienced shortness of breath approximately eight times.[4] (Pl. Dep., pp. 33-34.)

Plaintiff continued in his food services detail until January of 2010, when his request for a detail change was approved by Defendant Brown and he was reclassified as "unassigned," which apparently means that he was not required to participate in any work detail. (Pl. Dep., pp. 56-57; Gramiak Dep. ¶ 15 & Attachs. 6, 7.) Plaintiff remained unassigned until June of 2010, at which time he approached Defendant Gramiak and requested that he be assigned a work detail. (Pl. Dep., pp. 57-58; Gramiak Aff. ¶ 16 & Attach. 8.) Plaintiff was then assigned to work as a "visitation orderly," which required that he arrange the visitation room and buff the floors. (Pl. Dep., pp. 58-61; Gramiak Aff. ¶ 16.) When Plaintiff complained about the dust he encountered while buffing the floor as a visitation orderly, Defendant Gramiak consulted with medical staff and, pursuant to their advice, provided Plaintiff first with a dust mask and later with "respirators." (Pl. Dep., pp.

---

[4]Plaintiff's medical records do show that he was diagnosed with chronic obstructive pulmonary disease and advised to quit smoking in May of 2010. Plaintiff appears to have heeded this advice, as he reported in December of 2010 that his respiratory condition improved after he stopped smoking. (See Aremu Aff. ¶¶ 16-18 & Attach 1.)

6

58-61; Gramiak Aff. ¶ 17; Aremu Aff. ¶ 20.) Notably, while Plaintiff does not dispute that he was provided with this equipment in response to his complaints, he indicated in his deposition testimony that the equipment was inadequate. (See Pl. Dep., pp. 58-62.) However, Plaintiff admits that medical personnel determined that his visitation orderly work detail was consistent with his medical profile. (Id. at 62.)

In January of 2011, Plaintiff was removed from the visitation orderly detail due to poor performance and reassigned as a "dorm orderly," which ostensibly required tasks such as straightening shoes and making sure beds were made, but often required no work at all. (Pl. Dep., pp. 58-61; Gramiak Aff. ¶ 16.) Plaintiff never had any problems or made any complaints regarding his dorm orderly detail. (Pl. Dep., p. 63.)

Plaintiff transferred to another facility in February of 2011. (Gramiak Aff. ¶ 7 & Attach. 1.) Once he arrived at his new facility, Plaintiff "dropped" the medical profile at issue in this case altogether so that he could qualify for a work detail as a heavy equipment operator. Plaintiff clarified that in order to "drop" his profile, he requested that a doctor at the new facility remove the profile, which the doctor agreed to do after conducting an evaluation pursuant to which he found that the profile was not necessary. (Pl. Dep., pp. 28-29.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(a). Applicable substantive law identifies which facts are material in a given case.[5] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes

---

[5]For purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

8

summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Merits of Plaintiff's Claims

As noted above, Plaintiff asserts that Defendants acted with deliberate indifference to his health and safety by assigning him to work details that exposed him to conditions that were restricted in his medical profile. (See doc. nos. 1, 40.) Defendants assert that, because they conferred with the medical department regarding Plaintiff's condition and the information they received, Plaintiff cannot show that they acted with deliberate indifference with respect to his work detail assignments. (See doc. no. 37-2, pp. 8-13.) Defendants also argue that they are entitled to qualified immunity, that Plaintiff impermissibly seeks to rely on a theory of supervisory liability in his claim against Defendant Brown, and that Plaintiff is not entitled to injunctive relief. (See id. at 13-20.)

The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement. Accordingly, a prisoner can recover under § 1983 for a violation of the Eighth Amendment if he can show that a prison official was deliberately indifferent to a substantial risk to his health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994);

9

Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). To prevail on such a claim, Plaintiff must make "a two-prong showing: an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010) (quoting Farmer, 511 U.S. at 834).

Regarding the objective prong, in order to show that he suffered an "objectively, sufficiently serious" deprivation, Plaintiff must show that Defendants subjected him to conditions that posed him a substantial risk of serious harm. Farmer, 511 U.S. at 834. As for the subjective prong, Plaintiff must demonstrate that Defendants acted with "deliberate indifference," which requires proof that Defendants disregarded an excessive risk of which they were actually aware. Id. at 833-34. Mere negligence or lack of due care is inadequate in this regard; rather, Plaintiff must show a conscious disregard of a serious and imminent risk. Id. at 835-39; see also Goebert v. Lee County, 510 F.3d 1312, 1326-1327 (11th Cir. 2007) (noting that the subjective component requires "conduct that is more than gross negligence" (citation and punctuation omitted)); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (noting that deliberate indifference requires "more than mere negligence" and stating that courts are to look for "obduracy and wantonness, not inadvertence or error in good faith").

Furthermore, while intentional interference with prescribed medical treatment may constitute deliberate indifference, see Estelle v. Gamble, 429 U.S. 97, at 104-05 & n.12 (1976), prison officials who lack specialized medical knowledge do not act with deliberate

10

indifference to the extent that they rely on the advice of medical staff in making decisions that affect a prisoner's conditions of confinement, such as whether a prisoner should be exempted from a particular work detail. See Knight v. Wiseman, 590 F.3d 458, 465 (7th Cir. 2009) (finding that prison officials did not act with deliberate indifference because they "were entitled to rely and did rely on [a] professional determination that [the prisoner] did not face any medical obstacles to performing work camp duties"); Waldrop v. Evans, 681 F. Supp. 840, 848-49 (M.D. Ga. 1988) (finding that prison administrators who are not medical professionals must rely on decisions of trained professionals regarding care provided to inmates), *aff'd*, 871 F.2d 1030 (11th Cir. 1989); Gill v. DeFrank, Case No. 98 Civ. 7851, 2000 U.S. Dist. LEXIS 8836, at *39-40 (S.D.N.Y. Mar. 9, 2000) (finding prison official did not act with deliberate indifference where plaintiff complained that his work detail was improper because of his asthma and other medical restrictions, and prison official verified with the medical department that plaintiff's medical condition did not prevent him from performing the detail in question); cf. Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989) (reversing summary judgment in favor of prison officials where plaintiff made sufficient showing that they had assigned him to a work detail involving hard, outside labor despite knowing that such conditions were likely to significantly aggravate his syphilis).

Here, Plaintiff cannot satisfy either the objective or subjective elements of his Eighth Amendment claims. Plaintiff emphasizes the existence of his medical profile restricting his exposure to extreme heat and fumes; he also asserts that he had to use chemicals and that, contrary to Defendants' evidence, the MSP kitchen was cooled with fans rather than air conditioning. (See doc. no. 40, pp. 1-4.) Based on these facts, he repeatedly asserts that his

11

food services work detail "violated" his medical profile. (See, e.g., id. at 1.)

However, Plaintiff misconstrues the determinative issue in his claims; the question is not whether his work detail "violated" his medical profile, but whether Defendants violated his Eighth Amendment rights. Notably, the only evidence of negative effects resulting from Plaintiff's work details following issuance of his medical profile are his own complaints of breathing problems, dizziness, and headaches. While Plaintiff has some history of respiratory problems, he admits that he only suffered shortness of breath a total of approximately eight times and never suffered an asthma attack during his incarceration at MSP. (Pl. Dep., pp. 33-34.) In addition, Plaintiff's medical records during the relevant time period specifically note the lack of any objective finding of the symptoms he complained of suffering during his food services detail. (Aremu Aff. ¶ 14 & Attach. 1, p. 48.)

More importantly, it is undisputed that the MSP medical staff – who issued the medical profile – consistently concluded that none of Plaintiff's indoor work details posed a risk to his health or safety, which they confirmed in responding to Plaintiff's complaints as well as to Defendant Gramiak's inquiries regarding Plaintiff's work-related limitations. (See id. ¶¶ 14, 19-20 & Attach. 1; Pl. Dep., pp. 34-35, 37-38, 49-51; Gramiak Aff. ¶ 20.) Additionally, Plaintiff admits that immediately after his transfer from MSP, another doctor examined him, concluded that his medical profile was unnecessary, and had the profile removed. (Pl. Dep., pp. 28-29.) In light of this evidence, the Court concludes that Plaintiff cannot show that his work detail assignments at MSP subjected him to a substantial risk of serious harm such that he was denied the "minimal civilized measure of life's necessities." See Farmer, 511 U.S. at 834. Therefore, he has failed to meet the objective prong of his

Eighth Amendment claim.

Plaintiff is likewise unable to satisfy the subjective prong, as he cannot show deliberate indifference on the part of Defendants. The undisputed evidence shows that following Plaintiff's initial complaints of breathing problems, he was issued his medical profile and removed from his outside work detail. (Pl. Dep., p. 44; Gramiak Aff. ¶ 12.) When he made similar complaints during his food services detail, prison officials contacted the medical department, who verified that Plaintiff was able to work in that detail; based on that information from a medical source, the prison officials responsible for Plaintiff's work detail, including Defendant Gramiak, initially declined to reassign him to a different detail.[6] (Pl. Dep., pp. 37-38; Aremu Aff. ¶ 19.) Similarly, when Plaintiff complained about exposure to dust in his visitation orderly detail, Defendant Gramiak consulted with medical staff and followed their advice in providing Plaintiff with special equipment to accommodate his needs. (Pl. Dep., pp. 58-62; Gramiak Aff. ¶ 17; Aremu Aff. ¶ 20.)

In short, Plaintiff has not shown that Defendants improperly disregarded Plaintiff's condition in assigning his work details. Rather, Defendant Gramiak and other MSP prison officials lacking specialized medical knowledge consistently followed prison procedure by conferring with medical personnel and acting in accordance with their professional opinions. The only evidence regarding Defendant Brown's response to Plaintiff's complaints about his work detail is that he refused to depart from Defendant Gramiak's determination, although he later granted Plaintiff's request to be removed from his food services detail. (See Pl.

---

[6]Defendant Brown later approved Plaintiff's request to be taken off the food services detail. (See Pl. Dep., pp. 56-57; Gramiak Dep. ¶ 15 & Attachs. 6, 7.)

13

Dep., pp. 66-67.) Because Defendants have shown the decisions regarding Plaintiff's work assignments were made in reliance on advice from medical personnel regarding Plaintiff's condition and limitations, Plaintiff cannot show that Defendants acted with deliberate indifference. See Knight, 590 F.3d at 465; Waldrop, 681 F. Supp. at 848-49; Gill,, 2000 U.S. Dist. LEXIS 8836, at *39-40.

In sum, Plaintiff can satisfy neither the objective nor subjective elements required for him to prevail on his § 1983 claims against Defendants. Therefore, the Court concludes that Plaintiff has failed to meet his burden of showing a genuine dispute of material fact with respect to those claims and that Defendants are entitled to judgment as a matter of law.[7] Accordingly, Defendants' motion for summary judgment should be granted, and Plaintiff's motion for summary judgment should be denied.

### III. CONCLUSION

In sum, the Court **REPORTS AND RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED** (doc. no. 37), that Plaintiff's motion for summary judgment be **DENIED** (doc. no. 40), that a final judgment be **ENTERED** in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 19th day of January, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[7]In light of this determination, the Court need not reach Defendants' remaining arguments regarding qualified immunity, supervisory liability, and injunctive relief.

14